weight of evidence to prove such a claim. The remarks above made in relation to the examination of the claim of Spencer apply also to the re-examination of the proof of debt made by Clarkson. Any other creditor present at the first meeting could have applied to have Clarkson's claim re-examined, and Mrs. Thomas, though not present at the meeting, could have applied, on the case now made by her affidavit, to have the meeting reopened and her objections to Clarkson's claim considered, but the register very properly held that the application to the second meeting was too late so far as the question of the right to vote at the first meeting was concerned. In all such questions it should not be overlooked that the bankrupt law [of 1867; 14 Stat. 517] affords and was intended to give speedy and summary methods for the settlement of insolvent estates, and that therefore great diligence should be required of all parties, where the want of such diligence will embarrass or delay other parties in interest. I do not, however, question the right or duty of the court at any time to entertain applications intended to correct mistakes, expose fraud or improper practice, or to bring to the notice of the court in these composition proceedings any matters that may properly be considered in determining whether the composition is fair and proper. Thus I am brought to the conclusion that the proceedings of the meeting have been regular, and that neither of the parties claiming to be aggrieved is in a position to ask, as a matter of right, that the proceedings be set aside, or the composition rejected, on the ground of irregularity.

The question still remains, however, whether it is for the best interests of creditors that it should be confirmed and recorded. The composition is only two per cent. No creditor has any very large interest certainly in its confirmation, although there is an apparent entire want of assets. The largest creditor, without whose vote. if she had been present, it could not have been passed, is strongly opposed to it. Her address was by accident or design erroneously given in the schedule of creditors by which the notices of the first meeting were issued, and she was not present to vote. I am not entirely satisfied about Clarkson's right to vote.

On all the circumstances, I am not able to bring myself to the belief that for so small a consideration as two per cent. on their debts it is for the best interests of the creditors to release the debtor from ninety-eight per cent. There has been a formal, but not a real, compliance with the requirements of the law as to the consenting majority of the creditors.

Order refused, without prejudice to the right of the bankrupt to propose the same or other composition.

---

## Case No. 13,230.

In re SPENCER.

[See Case No. 13,234.]

---

## Case No. 13,231.

SPENCER v. The ALIDA.

[13 Leg. Int. 369.]

District Court, S. D. New York. 1856.

MARITIME LIENS—SUPPLIES—FILING CLAIM.

[This was a libel for supplies by Louis C. Spencer against the steamboat Alida.]

[Before BETTS, District Judge.]

BY THE COURT. The leading facts to support the action correspond with those in the case of Elmore v. The Alida [Case No. 4,419]. The suit was commenced October 17, on a bill for milk supplied at daily trips during the month of September, amounting to $38.39; and for potatoes, supplied also daily from September 22 to October 10, amounting to $24.33. The lien particulars were filed October 17, the debt being contracted for each article of supply on the day of its delivery to the boat. The right of action, therefore, is only preserved by filing a lien specification within ten days thereafter. Two particulars of the debt contracted anterior to the 6th of October can be recovered against the vessel. The lien, therefore, ceased its action by the departure of the boat from this port, if the creditor did not avail himself of the statutory privilege to resuscitate it by filing a lien specification within ten days after that event.

A reference must be had to a commissioner, to ascertain the amount recoverable on these principles.

---

## Case No. 13,232.

SPENCER v. The CHARLES AVERY.

[1 Bond, 117.] [1]

District Court, S. D. Ohio. April Term, 1857.

SALVAGE—NATURE OF SERVICE—DANGER TO LIFE —BY REQUEST—RECEIVING PAY FOR SERVICE— MEASURE OF COMPENSATION.

1. Where a steamboat, on the Ohio river, laden with flour. was sunk by floating ice within a few feet of the shore, and her cargo was saved, at the request of the master of the boat, by fifty of sixty persons on the bank of the river. such service entitles the parties to a decree for salvage.

2. It is a well-settled principle of the maritime law, that risk or danger of life is not a necessary element of a salvage service. Where such risk or danger is incurred in saving property from destruction, it will place the salvors in a high position of merit, and entitle them to a more liberal compensation for the service than would otherwise be accorded to them.

3. The controlling inquiry in salvage cases is, was the property in peril of being lost, and was it saved by the efforts of those claiming to be salvors.

4. The measure of compensation, in salvage cases, depends wholly on the circumstances attending the service. Where there has been great personal exposure and risk, and property has been rescued from inevitable destruction

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]